THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:10cv174

| | |
|---|---|
| CAROLINA FIRST BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| CHARLES STAMBAUGH and ) | |
| CAMILLA STAMBAUGH, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment on Affirmative Defense of Laches [Doc. 21] and the Plaintiff's Motion for Summary Judgment [Doc. 22]. For the reasons set forth herein, the Plaintiff's Motion for Summary Judgment is granted, and the Defendants' Motion for Summary Judgment is denied.

I.  PROCEDURAL BACKGROUND

On July 22, 2010, the Plaintiff Carolina First Bank ("the Bank")[1] commenced this civil action in the General Court of Justice for Henderson

---

[1] After commencing this civil action, Carolina First Bank merged with TD Bank, N.A. For ease of reference, the Court will continue to refer to the Plaintiff simply as "the Bank."

County, Superior Court Division, alleging that the Defendants Charles Stambaugh and Camilla Stambaugh ("the Stambaughs") had defaulted on a promissory note secured by real property. [Verified Complaint, Doc. 1-2]. The Stambaughs timely removed the case to this Court on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1]. On August 24, 2010, they filed an Answer, Affirmative Defense and Counterclaim ("Answer and Counterclaim"), in which they denied the Bank's claim, raised the affirmative defense of laches, and asserted a counterclaim for breach of contract. [Answer and Counterclaim, Doc. 4]. The Bank filed a Reply to the Stambaughs' counterclaim on September 29, 2010. [Reply to Counterclaim, Doc. 7].

On June 30, 2011, the Stambaughs filed a Motion for Summary Judgment on their affirmative defense of laches. [Defendants' Motion for Summary Judgment, Doc. 21]. The same day, the Bank moved for summary judgment with respect to its claim for relief against the Stambaughs for money owed on the promissory note and the Stambaughs' counterclaim for breach of contract. [Plaintiffs' Motion for Summary Judgment, Doc. 22]. The Bank responded to the Stambaughs' motion on July 15, 2011. [Response, Doc. 28]. The Stambaughs responded to the Bank's motion on July 12, 2011 [Response, Doc. 26], and the Bank filed a reply on July 21, 2011 [Reply, Doc.

2

32]. The Court held a hearing on September 20, 2011, at which time the Court orally disposed of the parties' motions in favor of the Bank. The Court now enters this Memorandum of Decision and Order in support of that oral ruling.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d (1986)) (emphasis in original). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted).

"Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of

3

demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted).

In considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. George & Co., LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009).

## III. FACTUAL BACKGROUND

The following facts are not in dispute. On January 11, 2007, the Stambaughs executed a promissory note to the Bank in the maximum principal amount of $245,000.00 ("Note"). [Verified Complaint, Doc. 1-2 at ¶7; Answer and Counterclaim, Doc. 4 at ¶7]. The loan proceeds were to be used to develop land in Henderson County into a subdivision called Sims Hollow. The Note was secured by a Deed of Trust encumbering the property in Henderson County. The Note provided for a one-year maturity and monthly interest-only payments. [Note, Doc. 1-2 at 5-9]. The Bank allowed the Stambaughs to use loan advances to make the monthly interest-only payments. [Deposition of Charles Stambaugh ("Stambaugh Dep."), Doc. 24-2 at 21].

The Note matured on January 11, 2008, but the Stambaughs were unable to pay the amount owed. [Id.]. On January 11, 2008, the Stambaughs entered into a second promissory note ("Renewal Note"), which renewed and modified the Note and increased the maximum principal amount to $350,000. [Verified Complaint, Doc. 1-2 at ¶10; Answer, Doc. 4 at ¶10]. Specifically, Section 8 of the Renewal Note contains the following re-payment terms:

> **Payment.** I [the Stambaughs] agree to pay this Note in 60 Installment payments. During the first phase of

5

Case 1:10-cv-00174-MR -DLH   Document 41   Filed 12/14/11   Page 5 of 20

> the Loan I [the Stambaughs] will make 12 payments of accrued interest beginning February 11, 2008, and then on the 11th day of each month thereafter.
>
> Then, I [the Stambaughs] agree to make 48 installment payments during the second phase of the Loan. The second phase of this Note is amortized over 180 payments. A payment of $3,316.39 will be due February 11, 2009, and on the 11th day of each month thereafter. . . . A final payment of the entire unpaid balance of Principal and Interest will be due January 11, 2013. . . .

[Renewal Note, Doc. 1-2 at 12].

The Bank allowed the Stambaughs to use loan advances to make the monthly interest-only payments during the first phase. During the second phase of the Renewal Note, from February 2009 through November 2009, the Stambaughs used loan advances with the Bank's approval to make the monthly principal-and-interest payments. [Answer and Counterclaim, Doc. 4 at ¶30; Stambaugh Dep., Doc. 24-2 at 38; Affidavit of Nate Banchiere ("Banchiere Aff."), Doc. 24-1 at ¶10-12]. In November 2009, however, the Bank informed the Stambaughs that it would no longer advance funds for the purpose of the Stambaughs making their loan payments. [Answer and Counterclaim, Doc. 4 at ¶31; Reply to Counterclaim, Doc. 7 at ¶31]. In December 2009, the Bank demanded repayment of the funds already advanced for principal payments. [Answer and Counterclaim, Doc. 4 at ¶32;

6

Reply to Counterclaim, Doc. 7 at ¶32; Stambaugh Dep. Ex. 5, Doc. 24-2 at 60]. The Stambaughs did not repay the funds as requested. [Banchiere Aff., Doc. 24-1 at ¶18].

By a letter dated January 7, 2010, the Bank notified the Stambaughs that it was accelerating the Renewal Note. The Bank further made demand for the outstanding balance and notified them that attorneys' fees in the amount of 15% of the outstanding indebtedness would be sought if payment was not made within five days of the letter. [Banchiere Aff., Doc. 24-1 at ¶23]. The Stambaughs did not make any payments to the Bank in response to this letter. There is currently due and owing on the Renewal Note the total sum of $348,274.40 plus interest at the rate of $34.08 per day from and after June 30, 2011. [See id. at ¶24].

On March 5, 2010, WASLAW, LLC, acting as Substitute Trustee ("Trustee") under the Deed of Trust, commenced foreclosure proceedings against the property. [Notice of Hearing, Doc. 28-3]. On March 30, 2010, the Assistant Clerk of Superior Court for Henderson County entered an Order allowing foreclosure. [Order Allowing Foreclosure, Doc. 28-4]. The Stambaughs did not contest the foreclosure. [See Defendants' Motion for Summary Judgment, Doc. 21 at 2]. The Trustee noticed the sale of the

7

property for April 30, 2010. [Notice of Foreclosure Sale, Doc. 28-5]. The Trustee subsequently postponed the sale to May 28, 2010 and then to July 1, 2010. [Notices of Postponement, Docs. 28-6 and 28-7]. The Henderson County Clerk of Superior Court dismissed the foreclosure action on June 28, 2010. [Notice of Dismissal, Doc. 28-8].

While the foreclosure proceedings were underway, the Bank had an environmental study performed on the subject property. [Affidavit of Charles Stambaugh ("Stambaugh Aff."), Doc. 21-2 at ¶11]. The Bank abandoned the foreclosure proceeding after it became aware of severe environmental issues related to the property and determined that the property would be difficult to market because of its topography. [Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, Int. No. 8, Doc. 29-1 at 10]. The Bank then elected to sue the Stambaughs on the Renewal Note, and on July 22, 2010, the Bank commenced this civil action. [Verified Complaint, Doc. 1-2].

From January 7, 2010 to July 22, 2010, the Stambaughs did not take any action with respect to the property and did not spend any money on its development. [Affidavit of Luther E. Smith ("Smith Aff."), Doc. 21-1 at ¶6]. The Stambaughs failed to make any further improvements to the property, including work necessary to stabilize soil erosion on the property. In October

8

2010, the Henderson County Board of Adjustment levied fines against the Stambaughs for failure to stop soil erosion and for deviation from the submitted plans. [Stambaugh Aff., Doc. 21-1 at ¶14]. In August 2010, the cost of correcting the soil erosion was estimated to be $60,000. [Smith Aff., Doc. 21-1 at ¶7]. At all times relevant to this action, the Stambaughs remained the record owners of the property.

## IV. ANALYSIS

### A. Defendants' Motion for Summary Judgment

The Stambaughs contend that the Bank's claim against them is barred by the equitable doctrine of laches.[2] The essence of the Stambaughs' argument is that once the Bank announced its decision to foreclose on the Deed of Trust, the Stambaughs (apparently anticipating that the Bank would eventually take possession of the property) ceased any efforts to prevent soil erosion or otherwise protect the site's development, resulting in significant environmental damage to the property. The Stambaughs contend that the Bank is obligated to pay for such damage, as it was caused by the Bank's unreasonable delay in pursuing its rights. [Doc. 21 at 6].

---

[2]Although the Stambaughs filed a counterclaim for breach of contract, their Motion for Summary Judgment does not address their counterclaim. Rather , their sole contention is that the equitable doctrine of laches entitles them to summary judgment on the Bank's claim for relief.

9

The doctrine of laches affords the Stambaughs no relief in this case. Under North Carolina law, laches "applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties." See MMR Holdings, LLC v. City of Charlotte, 148 N.C. App. 208, 209, 558 S.E.2d 197, 198 (2001).[3] The delay must have been unreasonable and shown to have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine. Id. at 209-10, 558 S.E.2d at 198. In the present case, the Bank did not delay unreasonably in pursuing its remedies. The Bank filed suit within seven months of the Stambaughs' default, which is well within the statute of limitations period. See N.C. Gen. Stat. § 1-47(2) (ten-year statute of limitations for action on a sealed instrument). When a party acts within the applicable statute of limitations, laches will not apply absent exceptional circumstances. See Phipps v. Robinson, 858 F.2d 965, 972 (4th Cir. 1988) (citing with approval Creech v. Creech, 222 N.C. 656, 24 S.E.2d 642, 647 (1943)). The Stambaughs have

---

[3] Because jurisdiction in this case is based on the diversity of the parties, the Court applies the substantive law of North Carolina to determine the standard for laches. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 4 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1045 (3d ed. 2002).

failed to set forth a forecast of evidence establishing any exceptional circumstances in this case.

Moreover, the Stambaughs have failed to present a forecast of evidence that they suffered any harm or prejudice as a result of any alleged delay by the Bank. While the Stambaughs contend that the property suffered significant environmental damage after the Bank began pursuing foreclosure, such damage resulted from the Stambaughs' unilateral decision to cease spending money on maintaining the property. The Bank did nothing to prevent the Stambaughs from taking any action they deemed necessary with respect to the property, and the Stambaughs do not allege or offer any forecast of evidence to suggest otherwise. As the record owners of the property, the Stambaughs were charged with the rights and responsibilities of ownership. Moreover, under the terms of the Renewal Note and Deed of Trust, the Stambaughs were contractually obligated to maintain the property and undertake any needed repairs. The commencement of foreclosure proceedings did nothing to alter these obligations.

For these reasons, the Court concludes that the equitable doctrine of laches is inapplicable to this case. The Stambaughs' Motion for Summary Judgment is therefore denied.

11

## B. Plaintiff's Motion for Summary Judgment

The Bank contends that there is no genuine dispute of material fact that the Stambaughs defaulted by not making their required monthly principal and interest payments and thus are liable to the Bank for the entire balance of the Renewal Note, including attorneys' fees. The Bank further contends that it is entitled to summary judgment on the Stambaughs' counterclaim for breach of contract because the Renewal Note does not impose a duty on the Bank to advance funds for principal payments.

By its terms, the Renewal Note is governed by North Carolina law. [Renewal Note, Doc. 1-2 at 14]. It is well-established under North Carolina law that "[w]henever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." Gilmore v. Garner, 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quoting Lane v. Scarborough, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973)). "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Gould Morris Elec. Co. v. Atl. Fire Ins. Co., 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948).

"If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court." Dockery v. Quality Plastic Custom Molding, Inc., 144 N.C. App. 419, 421-22, 547 S.E.2d 850, 852 (2001) (citation omitted). The Court "must enforce the contract as written [and] may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) (citation omitted).

An ambiguity exists where the contractual language is "fairly and reasonably susceptible to multiple constructions." Wachovia Bank Nat'l Ass'n v. Superior Constr. Corp., -- S.E.2d --, 2011 WL 2848234, at *5 (N.C. App. 2011) (quoting Glover v. First Union Nat'l Bank, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993)). "If the agreement is ambiguous, . . . interpretation of the contract is a matter for the jury." Liptrap v. Coyne, 196 N.C. App. 739, 744, 675 S.E.2d 693, 696 (2009) (citation omitted), disc. rev. denied, 363 N.C. 805, 690 S.E.2d 701 (2010). The threshold issue of whether the language in a contract is in fact ambiguous, however, is a question of law for the Court.

13

Duke Energy Corp. v. Malcolm, 178 N.C. App. 62, 65, 630 S.E.2d 693, 695, aff'd, 361 N.C. 111, 637 S.E.2d 538 (2006).

In the present case, there is nothing ambiguous or unclear about the repayment terms set forth in the Renewal Note. By its plain terms, Paragraph 8 of the Renewal Note provides for re-payment of the loan in two phases. During the first phase, the Stambaughs were to make twelve monthly interest-only payments. During the second phase, the Stambaughs were to make 48 monthly principal-and-interest payments, amortized over 180 payments, from February 2009 until the maturity date of January 11, 2013, at which time the entire unpaid balance of principal and interest would become due.

The Stambaughs appear to concede that they did not make the payments as required by the written terms of the Renewal Note. [See Doc. 26 at 2]. They contend, however, that the Bank, knowing that the Stambaughs had no means of repaying the principal due under the loan, agreed to modify the written terms of repayment by allowing them to pay the principal due from loan proceeds, as evidenced by the Bank's acceptance of such payments for a period of nine months. [Id. at 2-7]. Such argument, however, is foreclosed by the plain language of the parties' agreement. Section 8 of the Renewal Note clearly provides for amortized payments during

14

phase two, whereby the principal amount of the loan would be reduced by an ascertainable amount every month and eventually extinguished on the agreed-upon schedule. Under the Stambaughs' interpretation of the contract, however, the principal amount of the loan would never be extinguished; in fact, it would have never decreased at all. This interpretation is completely at odds with the plain repayment terms to which the parties agreed.

In addition, the Renewal Note contains a "No Waiver" clause, which provides as follows:

> **No Waiver by Lender.** Your [The Bank's] course of dealing, or your [the Bank's] forbearance from, or delay in, the exercise of any of your [its] rights, remedies, privileges or right to insist upon my [the Stambaughs'] strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you [the Bank], unless any such waiver is in writing and is signed by you [the Bank].

[Renewal Note, Doc. 1-2 at 13]. It is undisputed that, at least for a time, the Bank allowed the Stambaughs to use loan advances to make their monthly principal payments. The Bank, however, was never *required* to do so, as it never entered into any signed written agreement with the Stambaughs to make that practice mandatory or obligatory. Thus, the Bank's course of dealing in allowing the Stambaughs to make principal payments from loan

15

proceeds had no effect on the repayment terms, and the Bank remained entitled to enforce the Renewal Note as written.

In addition to seeking the amount currently due and owing on the Renewal Note, the Bank also seeks to recover its reasonable attorneys' fees incurred in this action. On the issue of attorneys' fees, the Renewal Note provides, in pertinent part, as follows:

> On or after Default, to the extent permitted by law, I [the Stambaughs] agree to pay all expenses of collection, enforcement or protection of your [the Bank's] rights and remedies under this note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees not exceeding 15 percent of the outstanding balance of the Note.

[Renewal Note, Doc. 1-2 at 14].

Section 6-21.2 of the North Carolina General Statutes allows an award of attorneys' fees in an action to enforce a promissory note if the note provides for the payment of such fees. The fee may not exceed fifteen percent (15%) of the "outstanding balance" owing on the note. N.C. Gen. Stat. § 6-21.2(1). An "outstanding balance" is defined as "the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt." N.C. Gen. Stat. § 6-21.2(3). At the time this suit was instituted on July 22, 2010, there was a

total of $335,834.64 due and owing on the Renewal Note. [Verified Complaint, Doc. 1-2 at ¶9]. Accordingly, the Court finds that the Bank is entitled to an attorneys' fee award of $50,375.20.

For the reasons set forth above, the Court finds and concludes that there are no genuine issue of material fact with respect to the Bank's cause of action against the Stambaughs. By virtue of their execution of the Renewal Note, their agreement to be bound by its terms, and their subsequent failure to make the required payments, the Stambaughs defaulted and are thus liable to the Bank for the full amount of the loan, plus reasonable attorneys' fees in the amount of 15% of the outstanding balance.

### 3. The Stambaughs' Counterclaim

The Stambaughs assert a single counterclaim for breach of contract, claiming that the Bank was obligated to allow loan advances to fund principal payments on the loan, and that the Bank breached this obligation by refusing to make such advances and by demanding repayment of previous principal payments. [Answer and Counterclaim, Doc. 4 at ¶¶27-33]. This counterclaim fails as a matter of law.

By its plain terms, the Renewal Note contains no provision requiring the Bank to advance the Stambaughs monies for the repayment of principal.[4] The Stambaughs concede as much in their Response. [See Doc. 26 at 5 ("The note is silent on repayment of interest and principal from loan proceeds.")]. In support of their Counterclaim, the Stambaughs allege that in February 2009, Bank employees confirmed the parties' understanding that principal payments would be advanced from loan proceeds. [Answer and Counterclaim, Doc. 4 at ¶29]. Consideration of these alleged oral agreements, however, would violate the integration clause of the parties' agreement, which provides, in pertinent part, as follows:

> This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you [the Bank] and me [the Stambaughs]. This Note and the other Loan Documents are the complete and final expression of the agreement.

[Renewal Note, Doc. 1-2 at 14]. North Carolina courts have recognized that this type of integration or "merger" clause is a valid contractual provision and have consistently upheld their use. Zinn v. Walker, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987). "Merger clauses create a rebuttable

---

[4]In fact, the clear meaning of the terms of the Renewal Note is that advances could not be used to make principal payments during the period beginning February 11, 2009, as discussed supra.

18

presumption that the writing represents the final agreement between the parties. Generally, in order to effectively rebut the presumption, the claimant must establish the existence of fraud, bad faith, unconscionability, negligent omission or mistake in fact." Id. The Stambaughs have offered no forecast of evidence to rebut such presumption here.

While the Bank briefly allowed the Stambaughs to use loan advances to make their monthly principal payments, the parties never entered into any binding modification of the agreement to that effect. As a result, the Bank never became contractually obligated to advance monies for the purpose of making principal payments from the loan proceeds, and thus the Bank's refusal to make such advances did not result in a breach of the parties' contract. The Stambaughs' counterclaim, therefore, is dismissed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 22] is **GRANTED**; the Defendants' counterclaim is **DISMISSED**; and judgment is entered in favor of the Plaintiff against the Defendants in the amount of $328,274.40 plus interest at the rate of $34.08

per day from and after June 30, 2011, plus an award of attorneys' fees in the amount of $50,375.20.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment on Affirmative Defense of Laches [Doc. 21] is **DENIED**.

A judgment consistent with this Memorandum and Decision and Order is entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 13, 2011

Martin Reidinger
United States District Judge